3-11-0661 Harris National Association Appellee by Daniel Rubin v. Joseph Craig House Appellant by Josh Anderson Mr. Anderson My name is Josh Anderson on behalf of Rathbun Servant Act and Colesville Law Firm and today we are representing Mr. Joseph House, Mr. Craig House and it is our contention that at the district court hearing appointing a receiver that the court failed to make the proper decision and appointed a receiver in error We believe that the district court failed to exercise any discretion in its decision If it had exercised any discretion whatsoever and considered the facts and circumstances of the case it would have come to a different decision. According to the Illinois Mortgage Foreclosure Act, it states that in a commercial foreclosures case when there is a reasonable probability that the mortgagee or the bank will succeed on the merits of the case that there is a presumption that there should be a receiver appointed However, it's axiomatic that... I'm sorry, can I back up? You absolutely can. Take a deep breath, relax. Sorry, I'm feeling a little under the weather today. Do you need a glass of water? That would be great. I can bring it with you to the podium. So if I may back up a bit. Under the Illinois Mortgage Foreclosure Act, it states that a receiver should be appointed when there is a reasonable probability that there will be a success on the merits However, it's well established by case law that the act merely creates a presumption in favor of the mortgagee and this is not something that's guaranteed. And it's axiomatic that a presumption is something that is not guaranteed or automatic but can be refuted or rebutted. As in any other presumption in law, this can be refuted or rebutted by facts and extenuating circumstances that defeat the basis for this presumption. There are many examples of this in law and it's no different in this case. While it's been established by case law that a default, any technical default on the note in a commercial foreclosure case creates a reasonable probability that the bank will prevail, this does not mean that the court should lend a blind eye and just blindly appoint a receiver. The court should retain discretion and look at the facts and extenuating circumstances in the case. If this were not the case, there would be no need for judges or hearings in these matters. The fact remains that the court retains discretion in these cases and should consider facts and extenuating circumstances that may make, in this case, do make the case distinguished from any other cases. And the court should use an independent judgment upon the facts. In this case, the court should have looked at this case on a case-by-case basis. And looking at extenuating circumstances, one set of those extenuating circumstances are those that point to there not being a reasonable probability that Harris would prevail on facts if it were taken to trial. And some of those are brought in Mr. House's counterclaims, which are currently pending in district court. I'll mention these briefly as this will be a little bit beyond scope. But our belief is that even when a default is found on the paper, on the note, this is going to happen in almost every case. Therefore, the court should look beyond this technical default at the circumstances surrounding it and some that may explain why this default happened. And in this case, those circumstances that explain why this default happened are present, those being that Mr. House was told and promised by someone at Harris, by his Harris Bank representative, that as had happened in the past, they would renew his loans. And he depended on these renewals. And Harris knew that. And upon making this promise, he ran his business as if these were going to be renewed, as he had in the past. And in the terms of the note, there's a paragraph that says, modifications and amendments may be made orally. And this is exactly what happened. Therefore, we believe that there is enough evidence at the hearing, presented at the hearing, and in the counterclaims, which were an exhibit at the hearing, for the court to consider and come to the determination that there was not a reasonable probability that Harris would prevail on the facts. Secondly, the second set of extenuating circumstances that should have been considered at the hearing are those that involve the property itself, those that set this case apart from any other cases that have been cited in the briefs. And defendant, I'm sorry, Eppley Harris contends that in order to rebut this sort of a presumption, a good cause must be shown. Well, good cause, the court has not decided what good cause exactly means. It has not been defined. Good cause is something that we argue is different in each and every case. In order to find such good cause, one must look at, again, the facts and circumstances surrounding the case. As in this case, they might be different. The good cause might be different than in a different case with different facts. The facts are here that Mr. House was in the contracting business or attempting to be in the contracting business. He purchased three separate properties, which he intended to rent. These were residential homes, but he intended to rent them out and to make money off of them. And in order to do this, he took out these commercial loans. However, in all the other cases that are cited by Harris Bank in their briefs and in our briefs as well, in the state of Illinois, all of the people that were taking out loans in those cases were large corporations or large developments. For instance, in Centerpoint, the corporation there was a large multi-unit commercial development with multi-stories in Chicago. And this obviously takes a lot of expertise in management and finances, and someone who is well-versed in those things in order to take care of that property and maintain it for the bank and make profits for the bank. And in all of the other cases, it's very similar. There were other developments that were under development or were to be started in development. These were large projects, multimillion-dollar projects that would encompass many years to be finished. And in this case, these are just not the facts. The facts are here that there are three small residential homes that Mr. House already maintains on his own. He collects the rents. He cuts the grass. He maintains the properties. He does everything that he needs to do in order to keep these properties in good repair. There is really no need for a receiver. He already does everything here. In those cases, it's obvious to see the need for a receiver. In this case, there just is no need for a receiver, as he can do these things. These are small residential properties. Further, Mr. House has already gone through – has been taken advantage by Harris Bank in this process. If the appointment of the receiver stands, Mr. House is going to spend a small fortune in receiver fees on top of all the fees that he's already being charged, which he contends are improper. To go back, he contends that the fees and the amounts that he's being charged by Harris Bank were improperly calculated. Therefore, the receiver fees are in addition to this, and on top of that, they are a detriment to Mr. House. In the other cases, like I said before, these were large corporations, large developments, and it was just a formality to appoint a receiver. It was – it would not actually – the appointment of a receiver in those cases did not really have any effect on the corporations. Here, this is a single individual person, and the appointment of a receiver affects his – not only his livelihood, but his family home, as it was cross-collateralized with these loans. So this entire process is not only threatening Mr. House's business, his livelihood, but his family and well-being as well. Further, there is a glaringly obvious, less oppressive alternative here. That is, in each of the notes, there is a clause that contains an assignment of rents. And we would contend that the assignment of rents should and could be easily executed at no extra cost to the receiver. Mr. House is already collecting the rents on his own. These could be turned over to the bank with no extra cost to Mr. House. The receiver is an undue burden to Mr. House. The small fortune that he's spending on these fees is an undue burden to Mr. House. And as you can see by the facts, it's quite different from the other cases that we have cited. Finally, there is really no risk here to Harris Bank at not being able to collect the amounts that they want if a receiver is not appointed. Mr. House is currently maintaining the property, and if they exercise this assignment of rents, they can get the rental amounts from the property. Therefore, if the district court had considered the facts and the extenuating circumstances here in this case, they would have and should have come to the determination that these extenuating circumstances set Mr. House's case aside from the others and allow the court to use its discretion and come to the determination that there was not in fact a receiver needed in this case, and that in fact it would be oppressive and an undue burden on Mr. House in order to have this receiver appointed. Therefore, we believe that this case should be remanded back to the district court for reconsideration and the use of their discretion to consider the facts and circumstances of the case. Thank you. Thank you. Mr. Rubin, when you're ready. Good morning, Your Honors. May it please the Court, my name is Daniel Rubin and I represent BMO Harris Bank N.A., formerly known as Harris N.A. The circuit court's decision should be affirmed because Harris met its burden under Section 1701 B.2 of the Illinois Mortgage Foreclosure Law. That Section 1701 states that a circuit court should, shall appoint a receiver if the mortgagee establishes a reasonable probability on the merits of success in the case and that the mortgages provide for the appointment of a receiver or possession of the property. There's been no dispute from appellants that the mortgages provide for an appointment of a receiver, nor is there any dispute that the loans matured pursuant to their own terms in 2007 and 2008. Only two of the mortgages provided for the appointment of a receiver, if I'm not mistaken, the theater of property. I believe what the third mortgage provides for possession of the property. In lieu of litigation or even before litigation? Yes, Your Honor. All right. So all three provide for possession in some instances. The appellant's argument is that the court has discretion to appoint a receiver. The enactment of the foreclosure law in 1987 as stated in Centerpointe and 108 North State Street and the plain language of the statute itself indicates there is little to no discretion. Section 1105B of the foreclosure law states that the word shall shall mean mandatory and not permissive. That's the legislature speaking in this section. And then 1701B2 provides that the court shall upon request shall place the mortgagee in possession. So there's the word shall in 1701 that makes it a mandatory requirement. Unless, in this case, Mr. Krekhaus could object and show good cause. The arguments that are made today and also made in the reply brief are that these are properties that are different from, say, the properties in Centerpointe and 108 North State. Obviously, they are different. But according to the statute, the Illinois legislature has determined there's two types of real estate for purposes of foreclosure law. There's residential real estate and non-residential real estate. Residential real estate is in Section 15.12.19 that discusses what residential real estate. There's no dispute from Krekhaus that these properties are non-residential properties. And therefore, they would fall under the guise of both under they would fit in the same bucket as the properties in 108 North State Street or in Centerpointe because they are non-residential. Mr. Krekhaus' comments today or the council's comments were that he purchased these properties for a commercial venture to make money. And that's just like the properties in 108 North State Street. They were bought in Centerpointe to make money and benefit the owner. These were not being used for residences. Now, in terms of the property discussed at the home, there was no receiver being sought on that property, and we never sought one in that specific case. I'd like to point out that the creation of a new third type of real estate that they appear to be arguing for is small, non-residential real estate. It's not in the code, and to create an exception for that would be degradation of the plain language of the statute. In terms of the cost of the receivers, the purposes of the receiver, Illinois, as stated in State Bank v. Purdy, is a state that relies on the theory that rents are incidents to possession of the property. And that's why a receiver or a mortgagee in possession motions are brought during foreclosures. The purpose is, frankly, to benefit all the parties in these cases because the rents received by the receiver would be segregated, put into the receiver's account, and then used to pay down on the debt that Craig House owes to Harris or any mortgager would owe to the mortgagee. The other purpose is also to figure out why the income-generating property isn't making the minimum payments required on the mortgage. Yes, Your Honor. There's something amiss here. Whoever has been managing it hasn't paid the obligation to the bank. Yes, Your Honor. So there's a difficulty there. Well, there's a difficulty, especially in this case, where the loans matured two or three years before the foreclosure suit was even brought. The allegations and the counterclaims are nothing but allegations at this point. Regarding modification of the notes, that was brought on the day of the hearing. They filed an amended counterclaim that made these allegations regarding promises to extend the note or whatever. The plain language of the notes, and there's been no dispute from Craig House that the notes matured two or three years ago and payment in full was not made. How many of these balloons worked? How many times have these been extended? I believe they've been extended probably perhaps two or three times. What period of time? A few months. Just months? Just months. Oh, we're not talking five years? No. Three years? No, the promissory note modifications which are attached to the complainant or part of the record indicate the extensions were for three or four months or maybe six months at most. The – and going to the cost and fees incurred as a receiver, the receiver is appointed but the circuit court retains supervision over this receiver and all the fees that the receiver is going to charge and there would be an additional debt would be added to the – only after the circuit court approves and then finds that they're reasonable fees or not. So going to the question of the issue of extravagant fees by the receiver, you know, if Mr. – as I stated to the circuit court, if Mr. Craig House continues to do what he says he's going to do with these properties, mow the yard, do these other things to keep it up, then the receiver – all the receiver needs to do is make sure the properties are kept in a condition and that it's rented. They do not have to do these. These are not duplicate obligations on the receiver. The receiver is not going to go out and cut the grass just to do it. If the grass is cut and it's complying with the municipal regulations, the receiver is not going to send anyone out there. That would be a waste of resources. There's no doubt about that. So I respectfully submit that the Illinois Mortgage Foreclosure Act provides that a mortgage receiver shall be appointed in these cases. They are non-residential properties that are commercial properties used by defendants to – in a money-making venture. And therefore, we ask that the circuit court's decision be affirmed. Any questions? Thank you. Thank you. And Mr. Anderson. Thank you, Ms. Court. If I may first address one of the court's concerns as to why the properties were not profitable at the time. This goes back to conversations that Mr. House had with his loan representative at Harris. One of the – the first property that he received his loan on, he was planning to – he was – I'm sorry. It was a loan that he was – a small home that he was going to build. And he built this home. And then upon going back and speaking with his representative, he was told that the levitated property next door was driving down his value on the house that he had just constructed. Is that his own home? No, sorry. This is one of the properties in question. Okay. And therefore, Mr. House was convinced by his loan representative that to – in order to boost the value of the house that he had just constructed, he should take out a loan and redo or revamp the home next to it. And that was done by Mr. House at the persuasion of his loan officer. And it was because – and when he went in and started to do these things and to revamp the home, it cost a lot more than what he had expected, more than what he and his loan officer had expected. And therefore, that was one of the reasons that there was – that was the main reason that there was not profits in the home, whether the profits were not where he thought they would be. That's why he needed the extensions, because he was not making the money that he expected to on these homes. Is he looking for other loan opportunities now? Yes, he has been. He's done it quite extensively, but he's been rejected by every bank because of these pending actions and because of the appointment of the receiver. He's gone to almost every bank in town, and they've all rejected him. And so it is an unfortunate situation, and that is why we believe that it is within the realm of the court's discretion to look at these other issues, look at these circumstances, and we don't believe that it is the intention of the statute to have the court so blindly appoint a receiver in cases that common sense and morality would point in a different direction, and to considering that this was a situation in which Mr. House did everything possible and did all the right things and honestly believes that he was taken advantage of by the bank. And therefore, we believe that the appellate court should send this back and have the court reconsider on the facts and look at the extenuating circumstances here and decide that it is in the best interest of Mr. House and of Harris Bank to allow this to proceed without the appointment of the receiver. Thank you. Thank you. We'll be taking this matter under advisement and conferring with our respected colleague Justice McDade before making a decision in this case, hopefully without undue delay.